**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

HAIM YUZARY,          :

                                  Civil Action No. 08-0463 (NLH)
          Petitioner,    :

          v.           :    **OPINION**

JEFF GRONDOLSKY, Warden,    :

          Respondent.    :

**APPEARANCES:**

Petitioner pro se
Haim Yuzary
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

**HILLMAN**, District Judge

      Petitioner Haim Yuzary, a prisoner currently confined at the

Federal Correctional Institution at Fort Dix, New Jersey, has

submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241.[1]  The sole respondent is Warden Jeff Grondolsky.

---

    [1] Section 2241 provides in relevant part:

    (a) Writs of habeas corpus may be granted by the
    Supreme Court, any justice thereof, the district courts
    and any circuit judge within their respective
    jurisdictions.
    (c) The writ of habeas corpus shall not extend to a
    prisoner unless-- ... (3) He is in custody in violation
    of the Constitution or laws or treaties of the United
    States ... .

Because it appears from a review of the Petition that Petitioner is not entitled to issuance of the writ, the Court will dismiss the Petition.  See 28 U.S.C. § 2243.

## I.  BACKGROUND

In 1991, during a routine random check by United States customs inspectors of passengers embarking on a flight to Panama, and after Petitioner had declared on a customs form that he was carrying $30,000 in cash, Petitioner was discovered to be carrying approximately $480,000 in cash.  Thereafter, he was subjected to two separate criminal prosecutions: (1) the first arising out of the false statement on the customs form, see 31 U.S.C. §§ 5316, 5322, 18 U.S.C. § 1001, and (2) the second charging him with money laundering and conspiracy to commit money laundering, see 18 U.S.C. §§ 371 and 1956(a)(2)(B)(i),[2] (the "money laundering conviction").  See generally United States v.

---

[2] Section 1956(a)(2)(B)(i) reads, in pertinent part:

Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States ... (B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part - (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; ... shall be sentenced to a fine ... or imprisonment for not more than twenty years, or both.

2

Yuzary, 112 F.3d 507, 1997 WL 234674 (2d Cir. 1997); United States v. Yuzary, 55 F.3d 47 (2d Cir. 1995).

This Petition is the latest in a series of efforts by Petitioner to attack the 1997 money laundering conviction. See United States v. Yuzary, No. 96-cr-967 (S.D.N.Y.).

On February 28, 2000, Petitioner moved for a new trial, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, based upon newly discovered evidence. Specifically, Petitioner argued that his prosecution had been based on illegal wiretapping in Panama and that the arresting agents were untruthful at trial in claiming that the arrest arose out of a random stop. At the request of Petitioner's counsel, the federal government had conducted a nationwide file review by the U.S. Customs Service, the DEA and the CIA to determine whether, at the time of Petitioner's arrest, there was any pending investigation of Petitioner and whether any information from that investigation was conveyed to Customs, even though the prosecutor's case file contained no such information. See United States v. Yuzary, 2000 WL 684948 (S.D.N.Y. May 25, 2000). The trial court denied the motion for new trial.

> Even assuming that the facts ... set forth are sufficient to substantiate that there was an ongoing CIA investigation of Mr. Yuzary and that wiretaps were used as a part of that investigation, [Petitioner] has not produced anything which leads to the conclusion that the customs inspectors who stopped and arrested Mr. Yuzary were aware of any ongoing investigation of Mr. Yuzary or that any member of the prosecution team

3

> had knowledge of an ongoing investigation or the use of wiretaps or obtained the benefit of any investigation or wiretap information either directly or indirectly.

2000 WL 684948, *5 (citations omitted).

Thereafter, in September 2000, Petitioner was sentenced to a term of 120 months in prison and 36 months supervised release. Petitioner appealed on the ground, inter alia, that the District Court had abused its discretion in denying his motion for new trial. In August 2001, the U.S. Court of Appeals for the Second Circuit affirmed the conviction and the trial court's denial of Petitioner's request for a new trial. United States v. Yuzary, 17 Fed.Appx. 43 (2d Cir. 2001).

In April 2004, Petitioner filed in the trial court a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, in which he raised a claim of ineffective assistance of counsel and a claim that his sentence must be vacated in view of the Supreme Court's decisions in United States v. Booker, 125 S.Ct. 738 (2005), and Blakely v. Washington, 124 S.Ct. 2531 (2004). The court found Petitioner's motion untimely and also denied it on the merits. Yuzary v. United States, 2005 WL 926909 (S.D.N.Y. April 21, 2005).

In December 2005, Petitioner filed in this Court his first petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241. See Yuzary v. Samuel, 05-cv-5917 (D.N.J.). Therein, Petitioner asserted the following ground for relief:

4

Newly discovered evidence not available at the time of trial clearly refutes and contradicts the government's position that Petitioner was randomly selected for questioning at JFK International Airport, New York City which would establish actual innocence.

Supporting Facts:

(a) Said evidence primarily consists of substantive Freedom of Information Act ("FOIA") evidence which unequivocally establishes that the government, prior to trial, indeed had a historical and long-running investigation consisting of both illegal wire taps and bank records from the Republic of Panama regarding Petitioner.

(b) Said FOIA substantive and highly material information reflects and confirms that the government seriously misrepresented their position to the Court regarding their Responses to Motion for Brady Material, Motion for Discovery and Request for 404(b) F.R.Cr.P. Information previously made by defense counsel.

Yuzary v. Samuel, 05-cv-5917 (D.N.J.) (Petition, ¶ 4).

By Opinion [24] and Order [25] entered August 13, 2007, this Court denied the first § 2241 Petition on the merits, holding that Petitioner's claim of actual innocence based upon newly discovered innocence was not the "extraordinary" case presenting evidence of innocence so compelling that it undermines confidence in the trial's outcome of conviction.  See Yuzary v. Samuel, 05-cv-5917, Opinion at 8-10 (D.N.J. Aug. 13, 2007)(citing House v. Bell, 126 S.Ct. 2064, 2077 (2006)).  This Court also noted that Petitioner's claim of actual innocence based upon new evidence had already been rejected by the trial court.  Id. at n.5.  In addition, in that action, Petitioner filed a supplemental motion

for release on bond of appeal, which was denied as non-meritorious and moot.  Id. at n.9.

Petitioner appealed the denial of relief in the first § 2241 petition to the Court of Appeals for the Third Circuit.  See Yuzary v. Samuels, No. 08-1026 (3d Cir.).  While that appeal was pending, he filed this "Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. § 2241 For Immediate Release on Appeal Bond By A Federal Prisoner In Custody."  Petitioner asserts the following ground for relief:

> Newly discovered evidence not available at the time of trial clearly refutes and contradicts the government's position that Petitioner was randomly selected for questioning at JFK International Airport, Queens, New York which would establish actual innocence and fraud upon the court created by the government for a wrongful conviction.

> Supporting Facts:

> (a) Said evidence primarily consists of substantive Freedom of Information Act/Privacy Act ("FOIA/PA") evidence which unequivocally establishes that the government, prior to trial, indeed had a historical and long-running investigation consisting of both illegal wire taps and bank records from the Republic of Panama regarding Petitioner.

> (b) Said FOIA/PA substantive and highly material information reflects and confirms that the government seriously misrepresented their position to the Court regarding their Responses to Motion for Brady Material, Motion for Discovery and Request for 404(b) F.R.Cr.P. Information previously made by defense counsel.

> (c) New evidence which will be argued shows that the government presented perjurious documentation with the truth about the reports of investigation by corrupted government agents employed by the Drug Enforcement Agency ("DEA") was covered up and hidden by the

> government that this country attached lead agent Rena
> de la-cova in a special mission in Panama Republic was
> arrested, pled guilty, convicted for three (3) years of
> prison time (in Florida) for violating the law pursuant
> to Title 18 U.S.C. § 641, Theft of government funds,
> which proves fraud upon the court by hiding all this
> evidence by the indictment.

Petition, ¶ 4.  In his prayer for relief, Petitioner asks for

release on bond of appeal and to vacate the time on his remaining

sentence on the basis of his actual innocence and wrongful

conviction obtained by fraud on the trial court.

On July 8, 2008, the Court of Appeals for the Third Circuit

issued its mandate in the appeal of Petitioner's first § 2241

petition, affirming this Court's denial of relief.  In its

Opinion, the Court of Appeals held that "he falls far short of

demonstrating that he is actually innocent of the crimes for

which he was convicted."  Yuzary v. Samuels, No. 08-1026, Slip

Opinion at 4 (3d Cir. March 17, 2008).[3]

To the extent the current Petition could be construed as a

request for release pending resolution of the appeal of

Petitioner's first petition, the decision of the Court of Appeals

has rendered that request moot.  However, Petitioner asserts that

he has acquired additional "new evidence," released by the

government in December 2007, and he adds to this Petition a third

---

[3] Petitioner was simultaneously pursuing various other
unsuccessful attacks on his conviction in the trial court and the
Court of Appeals for the Second Circuit.  See, e.g., Yuzary v.
United States, 2007 WL 4276864 (S.D.N.Y. 2007).

argument that the government failed to disclose that a DEA agent

in Panama, who was involved in an investigation of Petitioner,

was a convicted felon.[4]  Accordingly, this Court will address

Petitioner's claims on the merits.[5]

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in

relevant part as follows:

> A court, justice or judge entertaining an
> application for a writ of habeas corpus shall forthwith
> award the writ or issue an order directing the
> respondent to show cause why the writ should not be

---

[4] The supplemental information provided by Petitioner
indicates that Rene De La Cova was a DEA agent in Panama who
prepared a two-page report in July 1991, prior to Petitioner's
arrest in New York, documenting information from a confidential
informant that Petitioner had brought large sums of U.S. currency
into Panama on July 6, 1991, and on another occasion several
weeks earlier (the "DEA-6").  It is Petitioner's contention that
the existence of this report is evidence that the trial
witnesses, who said that his arrest in November 1991 was the
result of a random stop, perjured themselves.

Mr. De La Cova pleaded guilty to one count of theft of
government funds, 18 U.S.C. § 641, for a July 1993 offense
involving theft of funds in connection with a money laundering
investigation.  He was sentenced on March 25, 1994, to a term of
24 months imprisonment, three years supervised release and, as
later modified, a fine of $10,000.  The judgment has been
satisfied.  See United States v. De La Cova, 93-cr-611 (S.D.
Fla.).

[5] In support of the Petition, Petitioner has submitted
several voluminous and rambling supplemental memoranda, most of
which bear no relation to the claims asserted in the Petition.
Some of the supplemental memoranda, however, include additional
documents released to Petitioner by the Office of Investigation,
U.S. Immigration and Customs Enforcement, in December 2007, which
will be reviewed to determine whether they support Petitioner's
claims of actual innocence.

granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970). Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief. See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

## III.  ANALYSIS

As noted by the Court of Appeals for the Third Circuit in In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997), a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 has been the "usual avenue" for federal prisoners seeking to challenge the legality of their confinement. See also Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002); Chambers v. United States, 106 F.3d 472, 474 (2d Cir. 1997); Wright v. United

9

States Bd. of Parole, 557 F.2d 74, 77 (6th Cir. 1977); United States v. Walker, 980 F.Supp. 144, 145-46 (E.D. Pa. 1997) (challenges to a sentence as imposed should be brought under § 2255, while challenges to the manner in which a sentence is executed should be brought under § 2241).  Motions under § 2255 must be brought before the Court which imposed the sentence.  See 28 U.S.C. § 2255.  A one-year period of limitations applies to § 2255 motions.  See 28 U.S.C. § 2255(f).

Section 2255, however, contains a safety valve permitting resort to § 2241, a statute without timeliness or successive petition limitations, where "it appears that the remedy by motion is inadequate or ineffective to test the legality of [the prisoner's] detention."  See 28 U.S.C. § 2255(e).  In Dorsainvil, the Third Circuit held that the remedy provided by § 2255 is "inadequate or ineffective" where a prisoner who previously had filed a § 2255 motion on other grounds "had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate."  119 F.3d at 251.  The court emphasized, however, that its holding was not intended to suggest that § 2255 would be considered "inadequate or ineffective" merely because a petitioner is unable to meet the stringent gatekeeping requirements of § 2255.  Id.  To the contrary, the court was persuaded that § 2255 was "inadequate or ineffective" in the unusual circumstances presented in Dorsainvil

10

because it would have been a complete miscarriage of justice to confine a prisoner for conduct that, based upon an intervening interpretation of the statute of conviction by the United States Supreme Court, may not have been criminal conduct at all.  Id. at 251-52.

In Cradle v. U.S. ex rel. Miner, 290 F.3d 536 (3d Cir. 2002), the Court of Appeals emphasized the narrowness of the "inadequate or ineffective" exception.  A § 2255 motion is "inadequate or ineffective," authorizing resort to § 2241, "only where the petitioner demonstrates that some limitation of scope or procedure would prevent a § 2255 proceeding from affording him a full hearing and adjudication of his wrongful detention claim." Cradle, 290 F.3d at 538.  "It is the inefficacy of the remedy, not the personal inability to use it, that is determinative." Id.  "Section 2255 is not 'inadequate or ineffective' merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255.  The provision exists to ensure that petitioners have a fair opportunity to seek collateral relief, not to enable them to evade procedural requirements." Id. at 539.

Here, Petitioner argues that it would be a miscarriage of justice to deny him habeas relief pursuant to § 2241, because he

11

asserts he has new evidence that supports a claim of actual innocence.

Petitioner's claims are meritless. A claim of actual innocence relates to innocence in fact, not innocence based upon a procedural defect.[6] A petitioner must present evidence of innocence so compelling that it undermines the court's confidence in the trial's outcome of conviction; thus, permitting him to argue the merits of his claim. A claim of actual innocence requires a petitioner to show (1) new reliable evidence not available for presentation at the time of the challenged trial; and (2) that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence. See House v. Bell, 126 S.Ct. 2064, 2077 (2006); Schlup

---

[6] It is long established that a procedurally defaulted habeas claim may be considered by a federal court where the petitioner fails to show cause for the default but can show actual innocence. See Murray v. Carrier, 477 U.S. 478, 495 (1986) ("the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration"). See also Herrera v. Collins, 506 U.S. 390, 404 (1993) (a petitioner with an otherwise procedurally barred claim "may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence"). This rule, the fundamental miscarriage of justice exception, is only granted in extraordinary situations, such as where it is shown that the constitutional violations probably resulted in the conviction of one who is actually innocent. Id.; McCleskey v. Zant, 499 U.S. 467, 494 (1991). An actual innocence claim is not itself a constitutional claim, but instead "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Schlup v. Delo, 513 U.S. 298, 315 (1995); Herrera, 506 U.S. at 404.

v. Delo, 513 U.S. 298, 324, 327 (1995).  Furthermore, the Supreme
Court, in House, emphasized that the gateway standard for habeas
review in claims asserting actual innocence is demanding and
permits review only in the "extraordinary" case.  See House, 126
S.Ct. at 2077 (citing Schlup, 513 U.S. at 327).

     Here, as in prior proceedings, the "new" information
regarding the investigation in Panama in no way suggests that
Petitioner is "actually innocent" of the money laundering
offenses.  Both the Court of Appeals for the Second Circuit and
the Court of Appeals for the Third Circuit have already rejected
Petitioner's claim that the existence of the DEA-6 report,
reflecting the knowledge of a DEA agent in Panama that a "Haim
Yuzari" had brought large sums of money into Panama on two
occasions in 1991, in any way supports a claim of actual
innocence.  Petitioner has failed to present any evidence
suggesting that the arresting officers or anybody else involved
in Petitioner's prosecution had any knowledge of the DEA-6 report
or, therefore, committed perjury.  Nothing in the "new"
information provided here suggests that any illegal wiretaps took
place or that anybody involved in Petitioner's prosecution
derived any benefit from any such alleged illegal wiretaps.
Similarly, the subsequent criminal activity of the DEA agent who
prepared the DEA-6 report is in no way reflective of whether
Petitioner is actually innocent of the money laundering offenses.

As the trial court noted, that Petitioner did carry large amounts of cash to Panama in 1991 was corroborated by three other Panamanian customs officials.  See U.S. v. Yuzary, 2000 WL 685948, *1 (S.D.N.Y. May 25, 2000).

In the latest of his Supplements [Docket Entry No. 7], Petitioner attempts to bring this matter into the Dorsainvil exception by referring to the recent Supreme Court decision interpreting 18 U.S.C. § 1956(a)(2)(B)(i), Cuellar v. U.S., 128 S.Ct. 1994 (2008), in which the Supreme Court held that "merely hiding funds during transportation is not sufficient to violate the statute," 128 S.Ct. at 2003, but that "conviction under this provision requires proof that the purpose-not merely effect-of the transportation was to conceal or disguise a listed attribute," id. at 2005.  Petitioner suggests that the Cuellar holding requires a finding of "actual innocence" here, by referring to a page of his sentencing transcript in which his counsel argued that, in 1986, Petitioner was told that the funds he was then transporting were obtained lawfully from the sale of some gold.  Petitioner was not, however, charged or convicted of money laundering with respect to transportation of funds in 1986.  Instead, his conviction was for money laundering transactions in 1990 and 1991.

Moreover, other portions of the sentencing transcript attached to Supplement No. 1 [5], reflect that Petitioner

14

admitted at sentencing that he knew that the funds he transported in 1990 and 1991, for which he was convicted, were the proceeds of criminal activity.  (Supplement No. 1, Ex. H, colloquy between Petitioner, counsel, and sentencing judge.)[7]

---

[7] Petitioner does not attach to the Supplement the pages of his sentencing transcript in which he made a statement to the court, but includes subsequent pages in which he discusses with the judge whether he wants to make a second statement "clarifying" his earlier statement.  In the attached pages, the sentencing judge indicates his understanding of Petitioner's earlier statement.  Petitioner declines to "clarify" the judge's understanding of his prior statements.

> THE COURT: Then I raised the issue of the knowledge that these were proceeds of criminal activity and I got a response, that, yes, that there was knowledge when he went to Israel and met with Mr. Mordoch and the trips afterwards he had to make for various reasons of his own because he couldn't get free of doing the business, as I understood him.
>
> If there is something you want to clarify, do it now, ... .
>
> ...
>
> THE COURT: I understood the substance of what he was saying and I followed it up because it raised questions in my mind as to whether or not he wasn't acknowledging from the nature of the places and what have you that he went to collect the money, that he knew that they were proceeds of criminal activity, and what transpired in the course of my direct questions in the end was that he volunteered that he learned that it was narcotics proceeds in Israel, or talking to Mr. Mordoch and then came back and had other trips after that because he couldn't extricate himself from the course of conduct in which he had embarked on for whatever reasons.
>
> I mean, I got the impression because -- might be retribution by the Colombians and that sort of thing.

(Supplement No. 1, Ex. H, Sentencing Tr. at 216, 219.)

Again, in denying Petitioner's motion pursuant to Rule 60(b), the trial judge reiterated that Petitioner had admitted, during his sentencing hearing, knowledge of the nature of the transported funds.

> During sentencing on September 14, 2000, Petitioner made a length statement to the Court in which he admitted his guilt of the crimes charged.  Petitioner stated that, although he had not known initially that the money he laundered with co-conspirator Mordoch was drug money rather than the proceeds of legal sales of gold, he later learned from Mordoch that it was proceeds of narcotics sales.  He admitted that he nonetheless continued to transport such proceeds to Panama because he could not extricate himself from the money laundering scheme.

Yuzary v. U.S., 2007 WL 4276864, *1 (S.D.N.Y. Nov. 30, 2007) (citations to record omitted).

Thus, Plaintiff has failed to establish that anything about the Cuellar holding requires this Court to revisit Petitioner's conviction under the Dorsainvil exception.  Plaintiff has failed altogether to establish any "miscarriage of justice" that would permit this Court to apply the safety-valve language of § 2255 rather than its gatekeeping requirements.  Therefore, this Petition must be considered a second or successive motion under § 2255, which Petitioner has not received authorization to file, and over which this Court in the district of confinement, lacks jurisdiction.[8]  28 U.S.C. § 2255.

---

[8] Although this Court is reclassifying Petitioner's petition as a § 2255 motion, no Miller notice and order is necessary to afford Petitioner an opportunity to raise additional § 2255

Whenever a civil action is filed in a court that lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed."  28 U.S.C. § 1631.  Because Petitioner fails to establish any of the predicate grounds permitting a second or successive § 2255 motion, this Court finds that it is not in the interests of justice to transfer this Petition to the United States Court of Appeals for the Second Circuit.  Moreover, many of these same issues have been raised and adjudicated adversely to Petitioner in prior proceedings.  Accordingly, this Petition must be dismissed.

---

grounds.  The purpose of the Third Circuit's decision in United States v. Miller, 197 F.3d 644 (3d Cir. 1999), was to provide fair warning to petitioners whose petitions were being recharacterized as § 2255 motions so that they could ensure that all their claims were fully raised in a single all-encompassing § 2255 petition.  Such warning, the Miller court reasoned, is necessary because petitioners will thereafter be unable to file "second or successive" § 2255 petitions without certification by the Court of Appeals.  Because Petitioner in this case has already filed a § 2255 motion in the sentencing court, and because the current Petition is itself "second or successive," no purpose would be served by a Miller notice.

IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be dismissed without prejudice for lack of jurisdiction.  An appropriate order follows.


<u>  s/Noel L. Hillman                </u>
Noel L. Hillman
United States District Judge

At Camden, New Jersey

Dated: August 26, 2008

18